UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America,
    Plaintiff

    v.                                 Case No. 16-cv-67-SM
                                          Opinion No. 2017 DNH 041
Donna Schipani
and RBS Citizens, N.A.,
    Defendants

**O R D E R**

In 2002 and 2003, Andrew Donohoe failed to pay federal income taxes.  Four years later, a delegate of the Secretary of the Treasury gave Donohoe notice of delinquent tax assessments and demanded he pay approximately $305,000.  On the date those assessments were made, a federal tax lien arose in favor of the United States on all property and rights to property belonging to Donohoe.  In this proceeding, the government seeks a declaration that, as a result, it holds a valid lien on a one-half interest the government says Donohoe had in his former marital home - property that was conveyed into a revocable trust several years before the government's tax liens arose, and later awarded to his former wife in a divorce proceeding.  Donohoe's former wife, Donna Schipani, is the sole title-holder to that property.  She objects, asserting that the government's liens

against property held by her former husband never attached to the marital home.

The parties have filed cross-motions for summary judgment, each asserting that there are no genuinely disputed facts and each claiming that it is entitled to judgment as a matter of law.  For the reasons discussed, both motions are denied.

### Standard of Review

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor."  Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "[a]n issue is 'genuine' if it can be resolved in favor of either party, and a fact is 'material' if it has the potential of affecting the outcome of the case."  Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016) (citations and internal punctuation omitted).  Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine

dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). In other words, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." Perez v. Lorraine Enters., 769 F.3d 23, 29–30 (1st Cir. 2014).

## Background

The relevant facts are as follows. In 1987, Andrew Donohoe and his now-former wife, Donna Schipani, purchased a home at 8 Saddlepath Road, Raymond, New Hampshire (the "Residence"). Twelve years later, Donohoe and Schipani created the "Donohoe Family Revocable Trust of 1999" (the "Family Trust") and established themselves as its trustees. Later that year, they conveyed all of their interests in the Residence to the Family Trust. That transfer is significant, as Schipani claims it shielded the Residence from the government's subsequent liens against Donohoe's interests in real property. She also claims the government failed to timely perfect its liens against Donohoe, so even if the liens could have attached to the Family

Trust's real estate holdings, they did not. The government, on the other hand, claims Donohoe retained an interest in the Residence despite the transfer to the Family Trust, so, when it subsequently acquired liens against all of Donohoe's interests in real property, those liens attached to his interest in the Residence notwithstanding that it was held in trust. That those liens were not timely perfected, says the government, has no impact upon this case.

The full factual backdrop to this proceeding can be summarized rather briefly:

- As noted above, in 1999, Donohoe and Schipani transferred the Residence into the Family Trust;

- In 2002 and 2003, Donohoe failed to pay federal income taxes;

- In June of 2006, the government erroneously recorded a Notice of Federal Tax Lien against Donohoe in the amount of $194,314.57 (that assessment was in error and led to the "re-assessment" listed below).

- On November 6, 2006, and again on January 1, 2007, the government gave Donohoe notice that it had assessed the unpaid taxes and, therefore, tax liens arose against all of Donohoe's interests in real property (the government did not, however, record that notice);

- On January 30, 2008, Schipani filed for divorce, noting that the Residence was subject to a

>   substantial tax lien (perhaps referencing the
>   lien the government recorded in error);
>
> - On June 4, 2008, the government recorded another
>   (seemingly erroneous) Notice of Federal Tax Lien,
>   this time in the amount of $188,468.60 and
>   against "The Andrew J Donohoe & Donna Schipani-
>   Donohoe Realty Trust of 1999, Nominee of Andrew J
>   Donohoe" (the "Realty Trust") – an entity that
>   never held title to the Residence;[1]
>
> - Eventually, the government seems to have
>   discovered its earlier errors and, on June 9,
>   2008, it recorded a Notice of Federal Tax Lien,
>   in the amount of $188,563.31, against "all
>   property and rights to property belonging to"
>   Donohoe, making specific reference to the
>   Residence; and
>
> - In September of 2008, as part of their ongoing
>   divorce proceedings, Donohoe and Schipani, as
>   trustees of Family Trust, conveyed the Residence
>   to Schipani.

**Discussion**

I. The Government's Motion for Summary Judgment.

In support of its motion for summary judgment, the government asserts it has a valid and enforceable tax lien against Donohoe's one-half interest in the Residence, despite the fact its lien arose <u>after</u> Donohoe transferred his interests in the Residence into the Family Trust. Specifically, the government says: (1) "[b]ecause the trust was revocable, Donohoe

---

[1]   In a recorded "Attachment to Form 668y," the government stated that, "This lien is filed to specifically attach real estate located at 8 Saddlepath Road, Raymond, New Hampshire."

retained a one-half interest in the property," and (2) when federal income taxes were assessed against Donohoe in 2006 and 2007, "federal tax liens arose on those dates in favor of the United States upon all property and rights to property belonging to Donohoe, <u>including his half-interest in the property</u> that was then held in his name as a trustee of The Donohoe Family Revocable Trust."  Government's memorandum (document no. 25-1) at 2 (emphasis supplied).  And, says the government, not only did those liens attach to Donohoe's interest in the Residence while title was held by the Trust but, when the Trust eventually transferred the Residence to Schipani (as part of the divorce), those liens continued to encumber the Residence.

There are, however, several unaddressed questions of law, as well as unresolved factual issues, that preclude granting the government's motion.  For example, the nature of the interest Donohoe retained in the Residence <u>after</u> he and Schipani deeded the property to the Family Trust is a question of New Hampshire law.  <u>See, e.g.</u>, <u>United States v. Murray</u>, 217 F.3d 59, 63 (1st Cir. 2000).  The government cites no New Hampshire legal authority for its claim that "because the trust was revocable, Donohoe retained a one-half interest in the property" even after title was transferred to the Trust.  Government's memorandum at

2.[2]  While that may be an accurate statement of New Hampshire law, the court is disinclined to act as counsel to the government or perform basic legal research in support of its assertions.  As then-Judge Scalia observed when sitting on the Court of Appeals for the District of Columbia, "The premise of our adversarial system is that [federal] courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."  Carducci v. Regan, 714 F.2d 171, 177 (D.C. Cir. 1983) (citations omitted).

   Whether the government's lien against "all property and rights belonging to" Donohoe attached to the Residence while it was owned by the Trust is a central (and potentially dispositive) question in this case.  It is not unreasonable to expect the government to provide adequate legal briefing on that issue.

---

[2]   The government makes that legal assertion several times in its pleadings and papers, but never cites a single legal authority in support of it.  See, e.g., Government's Memorandum at 1, 2, and 5; Government's Opposition Memorandum (document no. 21) at 2; Complaint at para. 14.

Additionally, the relief the government seeks - an immediate forced sale of the Residence - would seem prejudicial to both Schipani and her daughter, both of whom live in the Residence and neither of whom is at fault in this case. Under those circumstances, the court retains discretion to deny (or, at a minimum, delay) such a forced sale on equitable grounds. See, e.g., United States v. Brynes, 848 F. Supp. 1096, 1099 (D.R.I. 1994). The Internal Revenue Code provides that, "in all cases where a claim or interest of the United States therein is established, [the court] may decree a sale of such property by the proper officer of the court." 26 U.S.C. § 7403(c) (emphasis supplied). See also United States v. Rodgers, 461 U.S. 677, 706 (1983) ("[W]e too conclude that § 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and that some limited room is left in the statute for the exercise of reasoned discretion."). To assist courts in the exercise of that discretion, the Rodgers Court established a non-exhaustive list of factors that should be considered. Id. at 710-11. One of those factors directs courts to "consider the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation." Id. at 711. See also Id. at 709 ("the exercise of limited equitable discretion in individual cases can take into account

both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort.").

Here, neither party has adequately addressed the impact that a forced sale of the Residence would have on Schipani and her daughter. See, e.g., United States v. Jensen, 785 F. Supp. 922 (D. Utah 1992) (discussing several factors that counselled in favor of denying the government's request that the court order a sale of the subject property). Nor have the parties discussed whether Schipani has the ability to refinance the Residence so, in lieu of a foreclosure sale, she might pay the government whatever it reasonably can expect to recover from a forced sale of the property - a figure that is entirely unclear at this juncture.[3] See generally Brynes, 848 F. Supp. at 1100

---

[3] The government represents that Donohoe's federal income tax debt for the tax years 2002 and 2003, including penalties and interest, is $310,031.55. It also represents that the Town of Raymond has assessed the Residence's value at approximately $209,500.00, and that it is subject to a $25,000.00 mortgage lien. Even assuming the Town's assessed value is reasonably close to the amount that could be recovered at a forced sale, that means there is approximately $184,500 in equity in the Residence. The parties do not discuss the amount Schipani might reasonably expect to recover from such a forced sale (for her unencumbered interest in the property), nor do they address the impact, if any, that Schipani's homestead interest in the Residence might have on her recovery. See RSA 480:1. See generally Rodgers, 461 U.S. at 703.

(authorizing a four-month delay in the government's requested sale of property to allow the innocent owner "an opportunity to either obtain financing or arrange for a private sale on more favorable terms [than a forced sale]").

In light of the foregoing, the court concludes that the government has not demonstrated that it is entitled to judgment as a matter of law.  Accordingly, its motion for summary judgment is denied.

II.  Schipani's Motion for Summary Judgment.

In support of her motion for summary judgment, Schipani asserts that the government failed to perfect its lien against the Residence because the Notice of Lien it recorded on June 4, 2008, against the Realty Trust fails to properly name the then-current owner of the Residence (i.e., the Family Trust). Accordingly, says Schipani, the government's liens "against Donohoe and the Realty Trust are ineffectual because the record title owner at the time of the recording of the liens . . . was actually the Family Trust."  Defendant's Memorandum (document no. 20-1) at 2.

But, as the government points out, as soon as it gives a taxpayer notice of an assessment and a demand for payment, a lien in favor of the government for the unpaid taxes arises automatically.  26 U.S.C. § 6321.  That it took the government quite some time to properly <u>perfect</u> its lien (by recording it in the appropriate registry of deeds and naming the proper title holder to the property) does not affect its ability to enforce the automatic lien against Donohoe; proper recording of the lien serves only to give notice to third parties and secure the government's interest (and priority) in the property against a subsequent purchaser or holder of a security interest (such as a mortgagee).  <u>See</u> 26 U.S.C. § 6323.

Schipani does not claim (nor does it appear she could claim) that the Family Trust was a "purchaser" when it took title to the Residence in 1999 - a status that might have allowed it to take title to the Residence clear of the government's unrecorded liens against Donohoe.  <u>See</u> 26 U.S.C. § 6323(h)(6) (defining "purchaser" as one who, "for adequate and full consideration in money or money's worth, acquires an interest . . . in property").  It is also unlikely that Schipani herself would qualify as a "purchaser" when she took title in 2008.  <u>See generally</u> <u>Brynes</u>, 848 F. Supp. at 1098-99 (discussing

whether the waiver of the right to alimony might qualify a spouse as a "purchaser" of the marital home pursuant to a divorce decree).  But, even if she were a "purchaser," by that time, the government appears to have properly perfected its liens against Donohoe when, on June 9, 2008, it recorded them in the registry of deeds.  At that time, the Family Trust held title to the Residence.

So, once again, it seems that resolution of this case likely turns on issues inadequately addressed by the parties: 1) whether the government's liens on "all property and rights to property" belonging to Donohoe attached to the Residence while it was held by the Trust; and 2) whether, in equity, a forced sale of the property ought to be denied or substantially delayed as necessary to mitigate prejudice to the innocent owner.

## Conclusion

At this juncture, neither party has demonstrated that it is entitled to judgment as a matter of law.  And, even if the government eventually demonstrates that it is entitled to prevail on its claims, it remains unclear whether this court should authorize (or, perhaps, delay) the forced sale of the Residence that the government seeks.

In light of the foregoing, the government's motion for summary judgment (document no. 25), as well as defendant's motion for summary judgment (document no. 20) are denied, without prejudice to renewing them based upon a better developed record and briefing.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 3, 2017

cc: Michael R. Pahl, Esq.
    Steven G. Shadallah, Esq.
    Justin LaFleur Pasay, Esq.